IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAMES DUKE BLEVINS, III,

      Plaintiff,           No. CIV 09-3457 EFB

   vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.       <u>ORDER</u>
_____/

     Plaintiff, proceeding pro se, seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.  For the reasons discussed below, the court grants plaintiff's motion for summary judgment and denies defendant's motion for summary judgment, and remands the case for further proceedings.

I.  <u>BACKGROUND</u>

     Plaintiff formally applied for SSI on April 15, 2007.  Administrative Record ("AR") 9.  Plaintiff alleged that he had been disabled since January 1, 1977.  *Id.*  Plaintiff's application was denied initially and upon reconsideration, and plaintiff requested an administrative hearing.  *Id.* at 44-45, 48-5260.  On May 29, 2009, a hearing was held before administrative law judge ("ALJ") Alexander Weir III.  *Id.* at 9.  Plaintiff was not represented by counsel at the hearing.

1

He testified, as well as Sandra Scheider, a vocational expert, and David Peterson, a medical expert. *Id.*

The ALJ issued a decision on September 3, 2009, finding that plaintiff was not disabled.[1] *Id.* at 9-14. The ALJ made the following specific findings:

1. The claimant has not engaged in substantial gainful activity since August 15, 2007, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following medically determinable impairments: depressive disorder, schizoaffective disorder and polysubstance abuse. These impairments are not a severe impairment (20 CFR 416.920a(d)(1)).

...

The evidence thus shows that the claimant has mental impairments of depressive disorder and schizoaffective disorder and polysubstance abuse. However the claimant has not received mental health treatment in over two years. He has not been psychiatrically hospitalized. There is no evidence of any episodes of psychotic or extremely disorganized behavior. He has not been held for psychiatric observation in any facility under California Health Code Section 5150. He claims have his drug abuse and alcoholism in remission (sic). The

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.* Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq.* Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. § 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits under both programs. *See* 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 and 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

    Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

    Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

    Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

    Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

    Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828, n.5 (9th Cir. 1995).

    The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Bowen*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

consultative psychologist, Ahmad Riahinejad, diagnosed the claimant with polysubstance dependence in remission (Exhibit 4F), as the claimant had recently completed a 90 day drug and alcohol recovery program.  The State Agency psychiatric consultants opined that the claimant's mental impairments are not severe.  I concur.

I find that the claimant's mental impairments provide only mild limitations in his daily living activities and social functioning.  They provide only mild limitations in his ability to maintain concentration, persistence and pace.  They have not caused any episodes of decompensation of extended duration.  Based on this assessment the claimant's mental impairments are not severe impairments (20 CFR 416.920a(d)(1)).  The claimant has not been I conclude that , which are mental impairments (sic).

3.  The claimant does not have an impairment or combination of impairments has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments (20 CFR 416.921 *et seq.*).

...

4.  The claimant is not disabled and has not been under a disability, as defined in the Social Security Act, since August 15, 2007, the date the application was filed (20 CFR 416.920(c)).

*Id.* at 19-25.

Plaintiff requested that the Appeals Council review the ALJ's decision.  *Id*. at 5.

However, on October 27, 2009, the Appeals Council denied review, leaving the ALJ's decision

as the "final decision of the Commissioner of Social Security."  *Id.* at 1-3.

## II.  <u>STANDARD OF REVIEW</u>

The ALJ's decision denying benefits "will be disturbed only if that decision is not

supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599,

601 (9th Cir. 1999); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir.

1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are

conclusive.  *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985).  The Court may not

substitute its judgment for that of the Commissioner.  *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir.

1996).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  *Saelee*

1    *v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind

2    might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401

3    (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

4      "The ALJ is responsible for determining credibility, resolving conflicts in medical

5    testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.

6    2001) (citations omitted). "Where the evidence is susceptible to more than one rational

7    interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

8    *Thomas v. Barnhart*, 278  F.3d 947, 954 (9th Cir. 2002).

9    III.  <u>ANALYSIS</u>

10      The ALJ found that plaintiff's depressive disorder, schizoaffective disorder and

11    polysubstance abuse were not severe impairments, and determined that plaintiff was not disabled

12    at step two of the sequential evaluation process.  The evaluation at step two is a de minimis test

13    intended to weed out the most minor impairments.  *See Bowen v. Yuckert*, 482 U.S. 137, 153-54

14    (1987); *Edlund*, 253 F.3d at 1158 (stating step two inquiry is de minimis screening device to

15    dispose of groundless claims).  An impairment is not severe if the evidence establishes a slight

16    abnormality that has only a minimal effect on an individual's ability to work. *Smolen v. Chater*,

17    80 F.3d 1273, 1290 (9th Cir. 1996).  As explained below, the ALJ's decision was not supported

18    by substantial evidence.

19      The ALJ gave several reasons for finding plaintiff's mental impairments non-severe.

20    First, he wrote that plaintiff had not received mental health treatment in over two years.  This is

21    incorrect.  In fact, plaintiff testified at the hearing that he was currently seeing a psychiatrist and

22    was currently on medication, and produced medication containers and appointment records as

23    proof.  The following exchange took place at the hearing:

24        Q: Okay.  Are you seeing a doctor now?
         A: Yes, sir.

25        Q: Who is the doctor you're seeing now?
         A: I can't pronounce his name, but I have an appointment slip here.  Dr.

26        Abdelnalek.

...
A: He is a psychiatrist, sir.
Q: Okay.  Before that, did you–I'm sorry.  How many times have you seen this doctor?  5/20/09 is like last week, right?
A: This, I just got off parole, sir.  I was seeing a doctor through the parole outpatient clinic, Elle Stuart [phonetic].  Because I was on parole, I had to see their clinical or their psychiatrist and stuff....
...
A: And I have all my appointment slips and everything here.
Q: Okay.  All right.  If you want to give me that, we'll add that also.
...
CLMT: And there's also a case note from her.

A.R. 31-33.  Later in the hearing, plaintiff and the ALJ discussed his recent medication:

Q: Okay.  All right.  Anything else you want to tell me?
A: He [the medical expert] said on the phone that I wasn't on no medications since like 2004 or whatever.
Q: Right.
A: I got, this is from my, this was my last prescription from the parole outpatient.  Okay?  It was, let me see the date, 5/7/2008 was my last prescriptions.
Q: Okay.  Let me see your bottles.  I'll read them into the record.
ALJ: Okay.  You were prescribed Seroquel 100 milligrams, prescribed by a Dr. Mark Jaffey [phonetic].  This is a prescription dated May 7th, 2008, and it's empty.  Depakote 500 milligrams, 5/7/08 by Dr. Mark Jaffe.  And Abilify 10 milligrams, 5/7/08 by Mark Jaffey.
...
Q: All three of these are empty so you've taken, these were your last prescriptions?
A: From the parole, sir.
Q: Okay.  These are like over, these are like a year old.
A: Yeah.
Q: You have anything since then?
A: Yes, sir.
Q: Well, let me see what you got now.  That's from the new doctor you're seeing?
A: Yes, sir.
Q: Okay.  Did you have any–
A: Getting out of parole, sir, and transitioning from their services to other services, it was a ten-month span, and then these are two more–
Q: Generic for, for Depakote, Dr. Abdelnaby, Mariam....This is 5/28/09.  That's yesterday....And Lithium Carbonate, okay.  And Geodon.
A: And then there's two prescriptions there that I'm waiting for an approval from Los Angeles for.
Q: Zyprexa--
A: Because of lawsuits or something.
Q: –and valproic acid.  This is Depakote.  You have Depakote.
A: That's Depa, Depakene.  There's a difference.

A.R. 37-39.  Thus, plaintiff clearly received mental health treatment and medication during the

two years before the hearing.  Given the extended colloquies he engaged in above, the ALJ's statement to the contrary is puzzling.

Several of the ALJ's other reasons for finding plaintiff's impairments nonsevere were also plainly incorrect.  The ALJ wrote that plaintiff "has not been psychiatrically hospitalized. There is no evidence of any episodes of psychotic or extremely disorganized behavior.  He has not been held for psychiatric observation in any facility under California Health Code Section 5150."  But the administrative transcript is full of medical records documenting these very events.  *See*, *e.g.*:

• AR 179, treatment note from 11/09/04: "Ct was hospitalized on 11/4/04 by SMART.  Ct was taken to college hospital for 3 day hold.  Ct is extremely psychotic, paranoid, and delusional."

• AR 257, Jon Chaffee, M.D., discharge summary from 11/06/04: "He is unemployed and disabled by chronic mental illness....The patient has been telling people that he has a computer chip that has been implanted in his back which is telling him to hurt people and he has threatened to harm his mother.  He has been placed on a 5150 legal hold as a danger to others.  He appears to be gravely disabled as well....He has essentially not worked over the course of his adult life and is disabled by chronic mental illness."

• AR 268, Jon Chaffee, M.D., psychiatric evaluation note from 2/07/03: "He has been abusing amphetamines and apparently other drugs and alcohol.  He was admitted at this time on a 5150 that was written by a police officer.  The patient was apparently screaming and yelling and scratching himself.  He believes worms are coming out of the skin.  He was lying under a car screaming for help when the police picked him up.  He is agitated and combative."

• AR 278, Michael Schwartz, D.O., discharge summary from 09/30/02: "The patient is a 34-year-old male who presented to the hospital complaining of voices.  He has a history of a number of prior psychiatric admissions.  He was admitted to the hospital this time

because of suicidal ideation and auditory hallucinations commanding him to kill himself. He had a suicidal plan to overdose, cut his wrist, or walk into traffic."

• AR 280-81, Jon Chaffee, M.D., psychiatric evaluation from 09/09/02: "The patient has a longstanding history of psychiatric illness and multiple previous psychiatric hospitalizations . . . . He is disabled by mental illness . . . . He is admitted at this time as a danger to self."

• AR 291, Mojtaba Sabahi, M.D., consultation from 5/10/02: "The patient is a 34-year-old white gentleman with a past psychiatric history significant for schizophrenia and history of illicit drug dependency. He states that he has had a history of schizophrenia since the age of 15 and has been on multiple medications. However, has not been compliant with his medications. His last psychiatric hospitalization was in 1999 . . . . is disabled and on SSI."

• AR 294, Ahmad R. Riahinejad, PhD, psychological evaluation from 12/18/07: "The claimant has a history of psychiatric hospitalizations in 1987, 2005, and 2006."

• AR 329, Parole Automation Tracking System note from 12/11/07: "He is . . . constantly hearing voices, telling him they are going to 'kick his ass,' positive for visual hallucinations (ghosts), not sleeping at all at night, but will sleep all day . . . Mr. Blevins is not stable at this time and is unable to participate in a work program."

• AR 333, Parole Automation Tracking System note from 8/13/07: "Mr. Blevins was first hospitalized at age 18 at Harbor General. He was placed on a 5150 hold danger to self, for attempted suicide by slashing his wrist. He was hospitalized in 2003 on a 72 hour hold . . . He was also hospitalized that same year a couple of months later at College Hospital Costa Mesa . . . . In 2006 he was hospitalized on a 72 hour hold at College Hospital Cerritos . . . . He was not treated for his mental illness this last incarceration, stating he did not tell the staff he was having symptoms. He states he did not want to be in the mental health part of the prison."

7

1    Thus, the reasons the ALJ gave for finding plaintiff's mental impairments were non-

2    severe are directly contradicted by even a cursory review of plaintiff's medical records.  His

3    decision is not supported by substantial evidence and the case must be remanded for further

4    proceedings.

5    Perhaps the ALJ meant to write that there was no evidence in the record of psychiatric

6    hospitalizations, episodes of psychotic behavior or 5150 holds since plaintiff had stopped

7    abusing drugs and alcohol.  Defendant argues that the ALJ based his step-two decision on

8    "Plaintiff's impairments being non-severe absent drug/ alcohol abuse."  Dckt. No. 31 at 10.

9    Although the ALJ did note that "disability benefits will not be granted in cases where drug

10   addiction or alcoholism is material to the determination of disability," that plaintiff had the

11   burden of proof on this issue, that the medical expert testified that he could not say if plaintiff's

12   substance abuse was material, and that plaintiff claimed that his drug abuse and alcoholism were

13   now in remission, he did not make such an explicit finding as defendant claims.  *See* AR at 12-

14   13.  However, even if the ALJ *had* found that plaintiff's impairments were non-severe absent

15   drug or alcohol abuse, and *had* explained that he based this opinion on plaintiff's lack of

16   psychiatric hospitalizations and 5150s since he became sober, the case would still have to be

17   remanded because the ALJ failed to develop the record.

18   An ALJ has a special duty to fully and fairly develop the record in a Social Security

19   benefits case.  An ALJ is not "a mere umpire" in disability proceedings.  *Higbee v. Sullivan*, 975

20   F.2d 558, 561 (9th Cir. 1992).  Rather, the ALJ has "a special duty to fully and fairly develop the

21   record and to assure that the claimant's interests are considered."  *Brown v. Heckler*, 713 F.2d

22   441, 443 (9th Cir. 1983).  The ALJ's duty to supplement a claimant's record is triggered by

23   ambiguous evidence, the ALJ's own finding that the record is inadequate or the ALJ's reliance

24   on an expert's conclusion that the evidence is ambiguous.  *See Tonapetyan v. Halter*, 242 F.3d

25   1144, 1150 (9th Cir. 2001); *Widmark v. Barnhart*, 454 F.3d 1063, (9th Cir. 2006).  *See also* 20

26   C.F.R. § 404.1545(a)(3) (stating "before we make a determination that you are not disabled, we

8

1  are responsible for developing your complete medical history, including arranging for a

2  consultative examination(s) if necessary, and making every reasonable effort to help you get

3  medical reports from your own medical sources").  Where a "claimant is not represented, it is

4  incumbent upon the ALJ 'to scrupulously and conscientiously probe into, inquire of, and explore

5  for all the relevant facts.' He must be 'especially diligent in ensuring that favorable as well as

6  unfavorable facts and circumstances are elicited.'"  *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir.

7  1978) (citations omitted).

8         In this case, plaintiff is mentally ill and was unrepresented at the hearing.  Moreover, the

9  medical expert testified at the hearing that the medical evidence established that plaintiff's

10  mental impairments met a listing, but that there was insufficient medical evidence to determine

11  whether plaintiff would have a severe impairment absent drug and alcohol use.  *See* AR 21-22.

12  Each of these circumstances triggered the ALJ's duty to scrupulously and conscientiously

13  explore all of the relevant facts.  There is no indication in the record that the ALJ attempted to

14  obtain plaintiff's recent mental health treatment records from his mental health providers.

15  Indeed, the ALJ's assertion that plaintiff had not had mental health treatment in the last two

16  years implies that he did not even consider the medical records and prescriptions that plaintiff

17  presented to him at the hearing in making his decision.  For these reasons, the case must be

18  remanded for further proceedings.

19  IV.  CONCLUSION

20         The ALJ's decision was not supported by substantial evidence.  Accordingly, it is hereby

21  ORDERED that:

22         1.  Plaintiff's motion for summary judgment is granted;

23         2.  The Commissioner's cross-motion for summary judgment is denied;

24         3.  The Clerk is directed to enter judgment in the plaintiff's favor; and

25  ////

26  ////

4.  The case is remanded to a different ALJ for further proceedings consistent with this opinion.  The new ALJ shall fully and fairly develop the record and shall consider all evidence in the record, including all physicians' records and third party statements.

DATED:  March 11, 2011.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE